**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5916-17T1

GREG VOCI,

     Plaintiff-Appellant,

v.

HARD CHEESE AC, LLC, and
THE CITY OF ATLANTIC CITY
ZONING BOARD OF ADJUSTMENT,

     Defendants-Respondents.

_____

Submitted May 29, 2019 – Decided July 11, 2019

Before Judges Yannotti and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1189-17.

Monzo Catanese Hillegass, PC, attorneys for appellant (F. Thomas Hillegass and John P. Amenhauser, on the briefs).

Testa Heck Testa & White, PA, attorneys for respondent Hard Cheese AC, LLC (Todd W. Heck, on the brief).

John Scott Abbott, attorney for respondent the City of Atlantic City Zoning Board of Adjustment.

PER CURIAM

This appeal arises out of a prerogative writs action in which plaintiff Greg Voci challenged a resolution by the Zoning Board of Adjustment of the City of Atlantic City (Zoning Board), which granted use and bulk variances to defendant Hard Cheese AC, LLC (Hard Cheese or the Applicant), so that it could build a car wash. Plaintiff appeals from an August 3, 2018 order denying reconsideration of a June 15, 2018 order, which rejected the challenges to the variances. Plaintiff argues the resolution should be invalidated because the then-Mayor Donald Guardian testified in favor of Hard Cheese's application, thereby undermining the impartiality of the Zoning Board's hearing and contravening the conflict-of-interest rules. The trial court found, however, that there was no showing that the Mayor had any conflict of interest. We affirm because the record supports that finding.

I.

In 2017, defendant Hard Cheese filed an application with the Zoning Board requesting use and bulk variances to construct an automated car wash facility on a vacant lot in Atlantic City. The property for the proposed car wash is located in neighborhood-commercial and single-family-attached zoning districts. Hard Cheese's proposed car wash is not a permitted use in either

2

district, thus, a use variance is required. Hard Cheese also sought bulk variances from two parking lot requirements.

On March 23, 2017, the Zoning Board held a public hearing on Hard Cheese's application. At that hearing, four people testified: then-Mayor Guardian; Licensed Professional Engineer and Planner Jon Barnhart; Montgomery Dahm, the principal of Hard Cheese; and the owner of a business located near the proposed car wash. All of those people testified in favor of the application and no one opposed the application.

At the beginning of the hearing, counsel for the Applicant explained that the Mayor wanted to comment on the application as a member of the public. Counsel requested the Zoning Board to allow the Mayor to testify first because the Mayor had another meeting he was going to attend. In making that request, counsel acknowledged that members of the public usually speak at the end of Zoning Board hearings. The Zoning Board granted counsel's request and the Mayor testified in favor of Hard Cheese's application. Specifically, the Mayor testified in relevant substance:

> I just wanted to speak favorably about this project. You know, I know it sounds like just a car wash, but if we only do the big projects that the big boys from outside spend $100-million, than we'll end up recanting. I'm not attacking - - We can't do (indiscernible). And big

projects aren't enough.  We need little people, ma and pa organizations to be doing something here.

The Mayor also testified:

> We need the small projects that are ow - - owned by local people, local residents, and in the big projects as well.  So I just wanted to speak favorably.  I understand that there may be some need for some zoning adjustments on the spot, but it's a vacant spot with nothing going on.  This is not heavily used, this side of - - of the - - the street. . . . And I was concerned about this spot with other commercial uses that it would be quite crowded, and that probably would be a problem because it is still a residential neighbor - - poor residential neighborhood.  Probably don't know that they could come in and object at this meeting.  So I think it's definitely a good use for this project.  It - - It's a good a project and I hope you look favorably on it being a business (indiscernible) project.  I'll be happy to answer any questions you have for me.

No one asked any questions of the Mayor.  Instead, the Zoning Board Chairman thanked the Mayor for attending the hearing and sharing his comments.  At that time, the following exchange occurred between the Mayor and the Chairman:

> CHAIRMAN LONGCRIER:  And [the Zoning Board] believe[s] in the diversity of business and mixed use and things like that.  So it will be said - - I don't want to be premature.  - - after the vote.  And - - But we will have our questions and our concerns, but, of course, we always believe we give everyone a fair shake.

A-5916-17T1

MAYOR GUARDIAN:  Yeah.  Don't give him an easy - -

CHAIRMAN LONGCRIER:  Yes.  Yes.

MAYOR GUARDIAN:  You could - -

CHAIRMAN LONGCRIER:  Yes.

MAYOR GUARDIAN:  - - (indiscernible) do what you're supposed to do - -

CHAIRMAN LONGCRIER:  Yes.

MAYOR GUARDIAN:  - - all the other restraints and things, but make certain - - but make sure - -

CHAIRMAN LONGCRIER:  Yes.

MAYOR GUARDIAN:  - - that he makes a buck so he pays his taxes.

CHAIRMAN LONGCRIER: Yes.  All right.  All right.

After the Mayor's testimony, the Applicant presented its case in support of the use and bulk variances.  To support its variance requests, the Applicant first presented testimony from Jon Barnhart.  Barnhart testified in detail as to why the variances were appropriate.  Regarding the use variance, Barnhart testified that the property was particularly well-suited for the proposed car wash based on the limited hours of the facility, the surrounding businesses, and the character of the street abutting the property.  Barnhart further testified that the proposed car wash would promote the general welfare by providing a service to the community in an aesthetically pleasing facility.  Concerning the bulk

A-5916-17T1

variance, Barnhart testified there was a hardship necessitating the variance as the required parking space setback would prevent the development of the property for any use based on the layout of the site. Moreover, Barnhart testified that the benefit of the deviations in the length of the parking spaces and the required setback for the parking area would outweigh any harm they caused.

Next, Montgomery Dahm, the principal of Hard Cheese, testified briefly. Thereafter, the Zoning Board questioned counsel for the Applicant on a number of details concerning the requested variances. After answering those questions, the Applicant finished its presentation, and the hearing was opened to the public for comment.

At that time, a local business owner testified. He stated that he was the owner of a laundromat located across the street from the proposed car wash. He spoke favorably of the proposed car wash, describing it as "a great opportunity" and "a nice eye opener thing for people" entering Atlantic City.

The public portion of the hearing then closed, and the Zoning Board voted on the application. All six members present voted to approve the Applicant's request for the use and bulk variances needed to build and operate the car wash facility.

In a resolution adopted on April 27, 2017, the Zoning Board memorialized its decision. Concerning the use variance, the Zoning Board concluded that the proposed use of the property as an automated car wash facility was "an appropriate use which is particularly well suited for the subject property." The Zoning Board explained that the property was located on a "main artery" of Atlantic City and that the property had been vacant for a substantial period. The Zoning Board also found that "[t]he proposed car wash is aesthetically appealing and does not have the noise or other impacts associated with car washes." As such, the Zoning Board concluded that the proposed car wash was "compatible with the zoned uses and the actual pattern of development."

As to the bulk variances, the Zoning Board determined that the requested setback for the parking area and the decreased parking space length dimensions would "not have a substantial detriment to the zone plan[.]" The Zoning Board found the car wash would provide a valuable service to the neighborhood and surrounding areas and its design "was not contemplated by the governing body and thus constitutes a change in circumstances" that was sufficient "to reconcile the grant of the use variance with the omission of such use from the zone." The Zoning Board's approval of the use and bulk variances was conditioned upon Hard Cheese complying with multiple conditions detailed in the resolution.

On June 12, 2017, plaintiff filed a complaint in lieu of prerogative writs against Hard Cheese and the Zoning Board. Plaintiff is the owner of a car wash located less than one mile from Hard Cheese's proposed car wash. Plaintiff had not opposed the variances before the Zoning Board. In his complaint, plaintiff alleged that the Zoning Board acted arbitrarily, capriciously, and unreasonably by approving defendant Hard Cheese's application for use and bulk variances. Specifically, plaintiff contended that Hard Cheese had not established the positive and negative criteria needed for use and bulk variances as required by N.J.S.A. 40:55D-70(d).

Defendants filed their answers. Thereafter, the trial court issued an order setting forth a briefing schedule and a date for a final hearing. In its brief in support of its challenge to the resolution, plaintiff argued that the Mayor's appearance before the Zoning Board and his statement in support of the application created a conflict of interest that "tainted" the entire hearing.

On December 11, 2017, the trial court held a hearing and the parties presented oral argument.[1] Thereafter, on June 15, 2018, the trial court issued an order and eighteen-page written opinion denying plaintiff's challenges to the resolution. The trial court found that the Zoning Board's decision granting use

---

[1] We were not given a copy of the transcript of the December 11, 2017 hearing.

and bulk variances was not arbitrary, capricious, or unreasonable. The trial court further held that the Mayor's appearance before the Zoning Board did not taint the hearing. In that regard, the court found that plaintiff had presented no evidence that the Mayor had a direct or indirect pecuniary interest in the car wash project. The court also found that there was no evidence that the Mayor had any personal interest in the project. Moreover, the court found that there was no showing that the Mayor's appearance before the Zoning Board improperly influenced the Zoning Board or any of its members because the Mayor did not appoint the Zoning Board members. Instead, the court found that the Mayor had "merely express[ed] comments in favor of a local project[.]" Accordingly, the trial court entered final judgment upholding the Zoning Board's resolution.

On July 5, 2018, plaintiff filed a motion for reconsideration. After hearing oral argument on August 3, 2018, the court denied plaintiff's motion for reconsideration, and read its decision into the record. Later that day, the court entered a written order memorializing its denial of reconsideration. Plaintiff then filed a notice of appeal, but appealed only the August 3, 2018 order denying reconsideration.

II.

Plaintiff raises one issue on appeal. He argues that the trial court abused its discretion by not finding that the Mayor's testimony before the Zoning Board tainted the proceedings. We reject this argument because there was no showing of a conflict of interest or other improper conduct by the Mayor or the Zoning Board.

We review a denial of a motion for reconsideration for an abuse of discretion. Brunt v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 357, 362 (App. Div. 2018). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Ibid. (quoting Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)). Nevertheless, we review de novo the law governing conflicts of interest, including the statutory and common law. Piscitelli v. City of Garfield Zoning Bd. of Adjustment, 237 N.J. 333, 350 (2019) (citing Dunbar Homes, Inc. v. Zoning Bd. of Adjustment, 233 N.J. 546, 559 (2018)); see also 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 221 N.J. 318, 338 (2015) ("In construing the meaning of a statute, an ordinance, or our case law,

our review is de novo." (citing Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 535 (2013))).

Our Supreme Court has recently reiterated that "[t]he overall objective 'of conflict of interest laws is to ensure that public officials provide disinterested service to their communities' and to 'promote confidence in the integrity of governmental operations.'" Piscitelli, 237 N.J. at 349 (quoting Thompson v. City of Atlantic City, 190 N.J. 359, 364 (2007)). Resolving whether a conflict of interest prevented the Mayor from testifying in favor of Hard Cheese's application is governed by the Local Government Ethics Law (LGEL), N.J.S.A. 40A:9-22.1 to -22.25; the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163; and the common law. Piscitelli, 237 N.J. at 349-50.

The LGEL applies to all municipal office holders, including mayors and members of zoning boards. Id. at 350. See also N.J.S.A. 40A:9-22.3(g). In enacting this code of ethics for municipal officers and employees, the Legislature recognized:

    a. Public office and employment are a public trust;

    b. The vitality and stability of representative democracy depend upon the public's confidence in the integrity of its elected and appointed representatives;

c. Whenever the public perceives a conflict between the private interests and the public duties of a government officer or employee, that confidence is imperiled;

d. Governments have the duty both to provide their citizens with standards by which they may determine whether public duties are being faithfully performed, and to appraise their officers and employees of the behavior which is expected of them while conducting their public duties[.]

[N.J.S.A. 40A:9-22.2(a) to (d).]

Thus, the LGEL aims to "make ethical standards in state and local government 'clear, consistent, uniform in their application, and enforceable on a statewide basis.'" Grabowsky v. Twp. of Montclair, 221 N.J. 536, 552 (2015) (quoting Wyzykowski v. Rizas, 132 N.J. 509, 531 (1993)).

To that end, N.J.S.A. 40A:9-22.5(d) provides that

[n]o local government officer or employee shall act in his [or her] official capacity in any matter where he [or she], a member of his [or her] immediate family, or a business organization in which he [or she] has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his [or her] objectivity or independence of judgment[.]

Next, the MLUL applies specifically to members of municipal zoning boards, and it provides that no member of a zoning board "shall be permitted to act on any matter in which he [or she] has, either directly or indirectly, any

12

personal or financial interest." N.J.S.A. 40:55D-69; accord Piscitelli, 237 N.J.

at 352; Grabowsky, 221 N.J. at 552.

Similar to the statutory requirements of the LGEL and the MLUL, in

Wyzykowski, our Supreme Court enunciated the four situations under the

common law where a public official is disqualified on conflict-of-interest

grounds. Specifically, an official is disqualified when he or she has:

> (1) "Direct pecuniary interests," when an official votes on a matter benefitting the official's own property or affording a direct financial gain; (2) "Indirect pecuniary interests," where an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member; (3) "Direct personal interest," when an official votes on a matter that benefits a blood relative or close friend in a non-financial way, but in a matter of great importance, . . . and (4) "Indirect [p]ersonal [i]nterest," when an official votes on a matter in which an individual's judgment may be affected because of membership in some organization and a desire to help that organization further its policies.
>
> [Grabowsky, 221 N.J. at 553 (second and third alterations in original) (quoting Wyzykowski, 132 N.J. at 525).]

The overarching principle of the conflict-of-interest provisions under the

LGEL, the MLUL, and the common law is that "[a] citizen's right to 'a fair and

impartial tribunal' requires a public official to disqualify himself or herself

whenever 'the official has a conflicting interest that may interfere with the

impartial performance of his [or her] duties as a member of the public body.'" _Piscitelli_, 237 N.J. at 352-53 (quoting _Grabowsky_, 221 N.J. at 551). In resolving whether an official has a disqualifying interest, "[t]he question is not 'whether a public official has acted dishonestly or has sought to further a personal or financial interest; the decisive factor is "whether there is a potential for conflict."'" _Id._ at 353 (quoting _Grabowsky_, 221 N.J. at 554). To answer that question, a court must determine "whether the circumstances could reasonably be interpreted to show that [conflicting interests] had the likely capacity to tempt the official to depart from his [or her] sworn public duty." _Ibid._ (first alteration in original) (quoting _Wyzykowski_, 132 N.J. at 523).

Courts should, however, apply the conflict-of-interest rules cautiously, as "[l]ocal governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official." _Grabowsky_, 221 N.J. at 554 (alteration in original) (quoting _Wyzykowski_, 132 N.J. at 523). Indeed, public officials "cannot and should not be expected to be without any personal interest in the decisions and policies of government[.]" N.J.S.A. 40A:9-22.4; _see also Grabowsky_, 221 N.J. at 554 ("It is essential that municipal offices be filled by individuals who are thoroughly familiar with local communities and concerns."). Accordingly, "the nature of

14

an official's interest must be carefully evaluated based on the circumstances of the specific case." Grabowsky, 221 N.J. at 554 (citing Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258, 268 (1958)); accord Piscitelli, 237 N.J. at 353-54.

Applying these principles to the facts in this case, plaintiff did not establish that the Mayor had any conflict of interest or that the Mayor's appearance before the Zoning Board tainted the proceedings. Initially, it is important to clarify what plaintiff is contending and what evidence plaintiff presented. Plaintiff is not alleging that any Zoning Board member had a conflict of interest. Thus, there was no showing that anyone who voted for the resolution had a conflict of interest. Moreover, plaintiff did not present any evidence that the Mayor had a direct or indirect pecuniary interest in the car wash project.

Instead, plaintiff's objection is based on a vague generalized contention that the Mayor was acquainted with the principal of Hard Cheese and had held some fundraising events at the principal's restaurant. Critically, however, there was no evidence supporting those vague assertions.

The evidence in the record establishes that the Mayor appeared and testified in favor of the application as a member of the public. The Mayor himself did not participate in the Zoning Board's vote on the variances.

A-5916-17T1

Accordingly, the Mayor is not prohibited from testifying by the LGEL, the MLUL, or the common law since he took no official action, such as voting, on behalf of the application. See N.J.S.A. 40A:9-22.5(d); N.J.S.A. 40:55D-69; Piscitelli, 237 N.J. at 351-53; Grabowski, 221 N.J. at 553; Wyzykowski, 132 N.J. at 525-26.

Plaintiff argues that the Mayor should be per se prohibited from testifying before the Zoning Board as a member of the public because he is "the highest ranking government official in the City of Atlantic City," and, thus, he has the potential to exert a "psychological influence" over the Zoning Board. Our Supreme Court has already rejected the position that a mayor's appearance before a zoning board automatically compromises the impartiality of the proceeding by creating a disqualifying conflict of interest. See Wyzykowski, 132 N.J. at 528, 530-31. Instead, the Court held that the conflict-of-interest provisions of the common law and LGEL continue to guide the inquiry even in situations involving the testimony of a mayor or other high-ranking official. See id. at 529-32.

Plaintiff also argues that the hearing was tainted by the Mayor's testimony because the Zoning Board accorded special treatment to the Mayor in allowing him to testify out of order and not subjecting him to cross-examination. This

16

argument is not supported by the record. The Mayor explicitly stated: "I'll be happy to answer any questions you have for me." Thereafter, no questions were asked and there were no objections placed on the record concerning the manner or substance of the Mayor's testimony. As to the order of the Mayor's testimony, counsel for the Applicant requested that the Zoning Board permit the Mayor to testify first due to a schedule conflict. Counsel acknowledged that the public usually testifies at the end of a public hearing. It was within the Zoning Board's discretion to allow the Mayor to testify first. Based on the underlying circumstances, granting that request did not undermine the impartiality of the proceedings.

Finally, it should be noted that there is no evidence that any of the Zoning Board members were disqualified from voting on the application due to the Mayor's testimony. The Mayor had not and will not be appointing the Zoning Board members because those appointments are made by the City Council of Atlantic City. See City of Atlantic City, N.J., City Code § 163-27(A) (2019).

In sum, the Mayor's testimony did not taint the Zoning Board's grant of the use and bulk variances. Under the LGEL, MLUL, and the common law, the Mayor was permitted to provide public comment on the application as it concerned a decision affecting the entire community, rather than a personal or

17

private interest. Moreover, the Mayor did not participate in the actual decision-making process. Finally, there is no evidence that any of the Zoning Board members should have been disqualified from voting based on the Mayor's testimony.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5916-17T1