**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3115-19
A-3125-19

IN THE MATTER OF THE TOWNSHIP OF EAST BRUNSWICK FOR A JUDGMENT OF COMPLIANCE OF ITS THIRD ROUND HOUSING ELEMENT AND FAIR SHARE PLAN.

---

HIDDEN OAKS WOODS, LLC,

Plaintiff-Respondent,

v.

TOWNSHIP OF EAST BRUNSWICK and TOWNSHIP OF EAST BRUNSWICK PLANNING BOARD,

Defendant-Appellant.

---

Submitted May 12, 2021 – Decided July 30, 2021

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket Nos. L-4013-15 and L-4282-19.

Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys for appellant Township of East Brunswick; and Lawrence B. Sachs, attorney for appellant Township of East Brunswick Planning Board (Michael J. Baker, Richard J. Mirra, and Lawrence B. Sachs, of counsel and on the joint briefs; Joseph D. Palombit, on the joint brief).

Eckert Seamans Cherin & Mellott, LLC, attorneys for respondent Hidden Oak Woods, LLC (Frank J. Petrino, of counsel and on the brief; Victoria D. Britton, on the brief).

Fair Share Housing Center, attorneys for respondent (Bassam F. Gergi, of counsel and on the brief).

New Jersey Appleseed Public Interest Law Center, attorneys for amicus curiae Lawrence Brook Watershed Partnership and Lower Raritan Watershed Partnership (Renee Steinhagen, on the brief).

PER CURIAM

In this land use dispute, we have consolidated two appeals for the purpose of writing a single opinion. In A-3115-19, defendants Township of East Brunswick (the Township) and Township of East Brunswick Planning Board (the Planning Board) appeal the Law Division's February 24, 2020 order reversing the Planning Board's denial of plaintiff Hidden Oak Woods, LLC's application for preliminary and final site plan approval to construct a 275-unit

residential complex (the complex) with fifty-five affordable housing units.  In A-3125-19, defendants appeal the provision in the Law Division's order enjoining and restraining the Township's Mayor Brad Cohen from participating in the Planning Board's hearing and consideration of plaintiff's site plan application as well as all site plan applications relating to a 2016 Housing Element and Fair Share Plan (HEFSP) and the 2016 Judgment of Compliance and Repose.  Having considered the parties' arguments in light of the record and applicable law, we affirm the order reversing the Planning Board's denial of plaintiff's site plan application but reverse the order enjoining and restraining Cohen's participation.

I.

This controversy arises from the Township's July 2015 declaratory judgment action for substantive certification of its affordable housing plan, In re Township of East Brunswick for a Judgment of Compliance of its Third Round HEFSP, No. L-4013-15 (Law Div. July 7, 2015).  Plaintiff was permitted to intervene due to its plans to build the complex.

A year later in July 2016, the parties reached a settlement agreement (2016 settlement agreement) resulting in a reduction of the Township's present need obligation of affordable housing units from 1664 to 1067.  Plaintiff's complex

was included for inclusionary development, and plaintiff agreed to set aside twenty percent of the units for affordable housing. An August 15, 2016 court order approved the settlement agreement on the basis that it was "fair and reasonable and in the best interests of those in need of low[-] and moderate[-]income housing . . . ." That same year, the Township adopted its third-round HEFSP (2016 HEFSP) as well as an ordinance rezoning the area of plaintiff's site to permit multi-dwelling apartment housing. Consequently, on December 12, 2016, the court entered a Final Judgment of Compliance and Repose declaring, among other things, that the Township had complied with its fair share housing obligation and that the court would retain jurisdiction to ensure implementation of the order.

In December 2017, plaintiff filed an application with the Planning Board for preliminary and final site plan approval of its complex. The complex is situated on approximately forty-one acres in the Township's multifamily dwelling apartment zone with frontage on Harts Lane and access to Tices Lane by way of Eagle Road (Ja844), and access to Harts Lane by way of Mill Brook Court. The State targeted the location for growth. The complex consisted of seven four-story buildings comprising 275 rental units with fifty-five, or twenty percent, dedicated for affordable housing, interspersed with the market-rate

units. Plaintiff sought bulk variances to permit encroachments into the landscape buffer area, for parking stalls and driveways, and for going beyond the minimum set back. The Township's land use ordinance permitted twenty-five percent, but the building coverage was five percent. Thirty-four percent of the site was allotted for open space even though the ordinance required twenty-five percent. Under the terms of the 2016 settlement agreement, plaintiff was responsible for the construction of two new traffic signals, one at the intersection of Tices Lane and Harts Lane, and the other at Tices Lane and University Avenue, along with the necessary paving and road striping.

Back in May 2017, plaintiff applied to the New Jersey Department of Environmental Protection (DEP) for a wetlands permit to disturb a wetlands and buffer area on the site. On June 20, 2018, the DEP issued a wetlands permit, GP-6, permitting disturbance of 0.19 acres of wetlands and 0.48 acres of buffer zone for the construction of a parking lot. Plaintiff's proposed storm water management system was also approved by the DEP as part of the GP-6 permit, which expires on June 19, 2023.

After five diverse hearing dates beginning July 18, 2018 and ending February 13, 2019, the Planning Board denied plaintiff's application. On April 24, the Planning Board adopted a resolution memorializing its denial.

In June, plaintiff filed a complaint in lieu of prerogative writs seeking a declaratory judgment reversing the Planning Board's decision and the appointment of a special master. In addition, plaintiff filed a motion to enforce litigant's rights in the 2016 settlement agreement. The two matters were consolidated for trial.

Following a one-day trial, the judge reserved decision. On February 24, 2020, the court issued an order and a written opinion entering final judgment in plaintiff's favor, thereby vacating the Planning Board's denial of plaintiff's site plan application. In addition, the court directed a limited remand of the site plan application to the Planning Board to approve the application, including the minor bulk variances requested, subject to "such other reasonable conditions as the [Planning] Board may deem necessary." The judge also denied, in part, and without prejudice, Fair Share Housing Center's (Fair Share) cross-motion to extinguish the fifty-five rental bonus credits available to the Township for the project and to revoke the Township's builders' remedy lawsuit immunity. In addition, the court restrained and enjoined Cohen from any further participation, as a member of the Planning Board, in the body's consideration and hearing of plaintiff's application, as well as any other development applications involving development projects designated or provided for in the 2016 HEFSP and 2016

Final Judgment of Compliance and Repose. A Mount Laurel[1] Implementation Monitor was appointed to review and approve any building or development applications to ensure that there was no conflict with the 2016 Final Judgment of Compliance and Repose. Plaintiff's and Fair Share's applications for counsel fees were denied without prejudice The judge also retained jurisdiction to enforce its order and related relief.

II.

We address defendants' numerous challenges to February 24, 2020 order in the order presented.

A. Reversal of The Planning Board's Denial of the Site Plan Application

Defendants argue the trial judge erred in reversing the denial of plaintiff's preliminary and final site plan application by failing to give proper deference to the Planning Board and substituting his judgment for the Planning Board's as to the necessary traffic plan and lack of a wetlands letter of interpretation (LOI) stemming from the DEP issues. Amici Lawrence Brook Watershed Partnership and Lower Raritan Watershed Partnership assert that the Planning Board was correct in requiring an updated wetlands LOI from the DEP under N.J.A.C. 7:7A-4.2(b)(1).

---

[1] S. Burlington Cnty. N.A.A.C.P. v. Mount Laurel Twp., 92 N.J. 158 (1983).

"[A] planning board's authority in reviewing a site plan application is limited to determining whether the plan conforms with the municipality's zoning and site plan ordinances." Sartoga v. Borough of W. Paterson, 346 N.J. Super. 569, 581 (App. Div. 2001) (citing W.L. Goodfellows & Co. of Turnersville, Inc. v. Washington Twp. Planning Bd., 345 N.J. Super. 109, 116 (App. Div. 2001)). This administrative function is not intended to include the legislative or quasi-judicial power to prohibit a permitted use. See Stochel v. Planning Bd. of Edison Twp., 348 N.J. Super. 636, 641-42 (Law Div. 2000). Thus, a planning board's role in evaluating a site plan application "is somewhat 'circumscribed.'" W.L. Goodfellows, 345 N.J. Super. at 116 (quoting Shim v. Washington Twp. Planning. Bd., 298 N.J. 395, 411 (App. Div. 1997)).

In reviewing a planning board's decision, we use the same standard used by the trial court. Cohen v. Bd. of Adjustment of Borough of Rumson, 396 N.J. Super. 608, 614-15 (App. Div. 2007). Like the trial court, our review of a planning board's decision is limited. Smart SMR of New York, Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998). We give deference to a planning board's decision because it is presumed to be valid, but we will reverse if its action was arbitrary, capricious, or unreasonable. New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adjustment, 160 N.J. 1, 14

(1999); Zilinsky v. Zoning Bd. of Adjustment of Borough of Verona, 105 N.J. 363, 367 (1987). And the court must determine for itself whether the law has been applied correctly. Wyzykowski v. Rizas, 132 N.J. 509, 518 (1993).

In accordance with N.J.S.A. 40:55D-42, "a developer, as a condition for approval of a . . . site plan," may be required "to pay [its] pro-rata share of the cost of providing only reasonable and necessary street improvements . . . located off-tract but necessitated or required by construction or improvements within such . . . development." This provision's "plain meaning and obvious legislative intent was to limit municipal authority only to improvements the need for which arose as a direct consequence of the particular subdivision or development under review." N.J. Builders Ass'n v. Mayor & Twp. Comm. of Bernards Twp., 108 N.J. 223, 237 (1987). Thus, a "strong . . . causal nexus" is required between the "off-site public facilities and [the] private development." Holmdel Builders Ass'n v. Twp. of Holmdel, 121 N.J. 550, 571 (1990). In addition to this "causal nexus," the developer may not be saddled with a "disproportionate share of the cost of [the] improvement[]." See F & W Assocs. v. Cnty. of Somerset, 276 N.J. Super. 519, 529 (App. Div. 1994) (quoting Holmdel, 121 N.J. at 571). "[A] planning [board] may not condition site plan approval on a developer paying for improvements that are unconnected to its development, or if connected, paying

an amount that is disproportionate to the benefits conferred on the developer." Toll Bros., Inc. v. Burlington Cnty. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 245 (2008).

In rejecting the Planning Board's decision, the trial judge initially expressed that that the entire process was irreparably tainted by Cohen's statements "evidenc[ing] a clear bias against [plaintiff's] [a]pplication and appear[ing] intended to undermine the current zoning of [its] property and, for that matter, the 2016 HEFSP overall." The judge added:

> Mayor Cohen's public comments about the [complex's] property, [plaintiff's] proposed project, and the sites included in the Township's 2016 HEFSP clearly demonstrated his pre-judgment of, and bias against, [plaintiff's] [a]pplication and violated both N.J.S.A. 40:55D-23(b) and [, N.J.S.A. 40A:9-22.5(d)].

As further proof of the Planning Board's bias, the judge cited another action involving property subject to the 2016 settlement agreement, H.D. Summerhill, LLC v. Township of E. Brunswick, No. L-6665-18 (Law Div. Dec. 4, 2018), wherein he enjoined the Township from taking any action regarding a proposed ordinance—preventing the plaintiff's proposed inclusionary development from going forward—sought following changes in the Township's political leadership after the 2016 settlement agreement, and barred Cohen from further

participation in the Planning Board's consideration of the application.[2] The judge reasoned:

> [T]he [c]ourt could not help but view the factual background and record developed before the Planning Board in this matter through the lens of the Township's preceding but concurrent actions that provoked the [H.D. Summerhill] [l]itigation . . . . The time-line speaks volumes as to bias and irreparable taint against the application exhibited by the [Planning] Board and its members and the resultant arbitrariness, capriciousness and unreasonableness of the . . . denial of [plaintiff's] application.

The judge's analysis did not stop there, as he also found that the Planning Board's resolution should be overturned on its merits. He determined that the Planning Board "continually requested additional road improvements . . . that were not necessitated or required by [the] development[] but were intended to address existing traffic conditions" in the Township. The Planning Board's denial of the application on the basis that plaintiff would not agree to implement the most expensive traffic plan violated "both the applicable provisions of the [Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163] and the [2016] [s]ettlement . . . as a matter of law" because it constituted an "unlawful

[2] As in this matter, the judge appointed a special master in H.D. Summerhill to ensure compliance.

condition," particularly where plaintiff had agreed to a reasonable alternative that would mitigate the project's traffic impact.

As to the wetlands LOI, the judge determined that the Planning Board's findings of fact in its resolution were "materially inaccurate" and lacked "sufficient evidential support." He found that the LOI did not expire on June 30, 2017, but was valid when the DEP issued the GP6 permit in June 2018. In addition, the record revealed a DEP official's unrebutted statement that no other wetland approvals were required for the construction of the complex. Thus, the judge reasoned the Planning Board's decision to deny the application on the ground of an expired and invalid LOI was "clearly arbitrary, capricious, unreasonable, contrary to applicable law and simply wrong." Additionally, the judge determined the Planning Board's refusal "to grant two minor, typical bulk variances for a reduction of the perimeter buffer and parking setbacks," considering unrefuted expert testimony and the Council on Affordable Housing (COAH) regulations mandating granting "inclusionary developers reasonable variances," was also "arbitrary, capricious[,] and unreasonable[]." [3]

The judge further held that the Planning Board's denial violated the terms

[3] Defendants concede on appeal that these variances would have been granted had the application not been denied on other grounds.

of the 2016 Final Judgment of Compliance and Repose and the Township's HEFSP:

> By denying the subject [a]pplication, the [Planning] Board substituted its judgment for that of this [c]ourt on such issues as site suitability and intended use. The suitability of the site for multi-family inclusionary development was extensively analyzed, and ultimately supported, by the . . . Township's governing body, the Planning Board, and the Township's professionals <u>before</u> the site was included in the Township's HEFSP and <u>before</u> the Township was granted a [2016] Final Judgment of Compliance and Repose. It cannot be emphasized enough that [the order] has shielded [the Township] from builders['] remedy lawsuits through July 2025 and reduced its fair share affordable housing obligation for the Third Round compliance period by [thirty-six percent].

In sum, the judge concluded the Planning Board's action was arbitrary, capricious, and unreasonable based on the combination of: (1) plaintiff "not get[ting] a fair and impartial hearing of its [a]pplication because of . . . bias" against the complex; and (2) the demand that plaintiff make the most expensive traffic improvements and the need for a new LOI were "utterly specious and just plain wrong."

For the reasons articulated by the judge in his written opinion, we agree with the reversal of the Planning Board's resolution denying plaintiff's site plan application. The Planning Board's decision was not entitled to any deference

because its action was clearly arbitrary, capricious, and unreasonable. At worse, the application should have granted approval conditioned on a new LOI, which plaintiff was willing to accept. See PRB Enters., Inc. v. S. Brunswick Planning Bd., 105 N.J. 1, 10 (1987) (holding a planning board may impose appropriate conditions in conjunction with the grant of final site plan approval); W.L. Goodfellows, 345 N.J. Super. at 111-12, 117-18 (holding that the planning board should have granted the site plan application conditioned on the acquisition of the drainage easement to carry excess stormwater across the adjoining property). Unlike Field v. Mayor & Council of Franklin Twp., 190 N.J. Super. 326, 329-33 (App. Div. 1983) (sewage disposal was deferred until the final approval and construction stages due to inadequate information) and Morris Cnty. Fair Hous. Council v. Boonton Twp., 228 N.J. Super. 635, 642-46 (Law Div. 1988) (site plan denied due to lack of stormwater management proposal), relied upon by defendants to support their contention that conditional approval was improper, plaintiff provided sufficient information to the Planning Board and the DEP, but was waiting for the state agency to provide a document.

Plaintiff persuasively showed the traffic plan demanded by the Planning Board required it to pay for road improvements beyond the traffic increase related to the complex's construction. Moreover, defendants concede that, as

part of the 2016 settlement agreement, plaintiff was responsible only for two new traffic signals along with the necessary paving and road striping that it was still willing to construct. Given the well-settled principle that settlements rank high as a matter of public policy, and that their terms should be adhered to "absent . . . fraud or other compelling circumstances," Cumberland Farms, Inc. v. N.J. Dep't of Envtl Prot., 447 N.J. Super. 423, 438 (App. Div. 2016) (quoting Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)), the Planning Board's denial is reversed as it violates the parties' settlement.

B. Rental Bonus Credits

Defendants assert that the judge erred by not definitively ruling that the Township was entitled to a fifty-five-unit rental bonus credit for the complex under the 2016 Final Judgment of Compliance and Repose because the Township has at least until December 2023 to fulfill that condition of immunity from builders' remedy lawsuits. The judge denied without prejudice Fair Share's cross-motion that the rental bonus credits be extinguished subject to "possible renewal in the event of the Planning Board's failure to comply with the [o]rder and accompanying directives."

Rental bonuses are extra credits a municipality may receive toward its fair share obligation for permitting affordable rental housing to be expeditiously

built, thereby reducing the municipality's fair share obligation. In re Adoption of N.J.A.C. 5:96 & 5:97, 416 N.J. Super. 462, 493 (App. Div. 2010), aff'd as modified sub nom. In re Adoption of N.J.A.C. 5:96, 215 N.J. 578 (2013). The Township would receive 110 credits towards its fair share obligation even though it would only produce fifty-five rental units. N.J.A.C. 5:97-3.5(a).

The judge did not abuse his discretion in denying Fair Share's motion without prejudice. See A & M Farm & Garden Ctr. v. Am. Sprinkler Mech., LLC, 423 N.J. Super. 528, 532 (App. Div. 2012). Entitlement to the rental bonus credits was an ongoing issue contingent on the completion of the complex with the fifty-five affordable housing units. For the judge to determine definitively whether the Township was entitled to the credits was premature because the clock had run on neither the Planning Board's implementation of his order reversing its denial of the site plan nor the construction of the complex's fifty-five affordable housing units. Thus, the status of the Township's rental bonus credits was appropriately placed on the back burner.

### C. Enjoining Mayor Cohen's Participation in Future Planning Board Proceedings

Defendants assert that the judge abused his discretion in enjoining and restraining Cohen from participating in the Planning Board's consideration of all site plan applications relating to the 2016 HEFSP and the 2016 Final

Judgment of Compliance and Repose. They claim the judge misapplied the MLUL, N.J.S.A. 40:55D-23(b), and the Local Government Ethics Law (LGEL), N.J.S.A. 40A:9-22.5(d), in overemphasizing a statement made by the Planning Board's Chairperson and not Cohen, as evidence of Cohen's personal bias against plaintiff's complex. The judge noted that Cohen remarked:

> And the fact that the applicant was not willing to do an updated LOI . . . it concerns me . . . I am disheartened by the fact that [plaintiff is] not willing to go that extra step to give me that level of confidence that I talked about earlier.

Defendants also cite the judge's reference to Cohen's alleged "unrestrained participation and advocacy in [plaintiff's] Planning Board proceedings" in his finding that there was a conflict of interest.

The record is clear that Cohen, who became mayor in January 2017, after the 2016 Final Judgment of Compliance and Repose, did not welcome the increase of affordable housing in the Township. In May 2018, he reiterated that he has a history of opposing "COAH driving residential development", and that the Township's COAH obligations should not be "driving" the Township's master plan. In July 2018, he stated that the Township's affordable housing obligation "comes second" to the needs of the Township. In his remarks before voting to deny plaintiff's site plan application, Cohen said "that this . . . part of

a COAH application should have no bearing on the process [by which] we review an application and the standards that we hold every application to." Yet, despite these views, the judge should not have enjoined Cohen's participation.

We review de novo the trial judge's order governing conflicts of interest, including the statutory and common law. Piscitelli v. City of Garfield Zoning Bd. of Adjustment, 237 N.J. 333, 350 (2019) (citing Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin, 233 N.J. 546, 559 (2018)). "The overall objective 'of conflict of interest laws is to ensure that public officials provide disinterested service to their communities' and to 'promote confidence in the integrity of governmental operations.'" Id. at 349 (quoting Thompson v. City of Atlantic City, 190 N.J. 359, 364 (2007)). Resolving whether a conflict of interest prevented Mayor Cohen from participating in matters affecting plaintiff's application is governed by the LGEL, N.J.S.A. 40A:9-22.1 to -22.25, the MLUL, and the common law. Piscitelli, 237 N.J. at 349-50.

"The [LGEL] applies to all municipal office holders, including mayors . . . [and] members of planning boards and zoning boards of adjustment." Id. at 350; see also N.J.S.A. 40A:9-22.3(g). In adopting the LGEL, the Legislature pronounced:

> a. Public office and employment are a public trust;

> b. The vitality and stability of representative democracy depend upon the public's confidence in the integrity of its elected and appointed representatives;
>
> c. Whenever the public perceives a conflict between the private interests and the public duties of a government officer or employee, that confidence is imperiled;
>
> d. Governments have the duty both to provide their citizens with standards by which they may determine whether public duties are being faithfully performed, and to apprise their officers and employees of the behavior which is expected of them while conducting their public duties. . . .
>
> [N.J.S.A. 40A:9-22.2.]

Thus, the LGEL aims to "make ethical standards in state and local government 'clear, consistent, uniform in their application, and enforceable on a statewide basis.'" Grabowsky v. Twp. of Montclair, 221 N.J. 536, 552 (2015) (quoting Wyzykowski, 132 N.J. at 531 ).

In that regard, N.J.S.A. 40A:9-22.5(d) provides that:

> [n]o local government officer or employee shall act in his [or her] official capacity in any matter where he [or she], a member of his [or her] immediate family, or a business organization in which he [or she] has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his [or her] objectivity or independence of judgment.

The MLUL applies specifically to members of municipal planning boards, and it provides that no member of a board "shall be permitted to act on any matter in which he [or she] has, either directly or indirectly, any personal or financial interest." N.J.S.A. 40:55D-69; see also Piscitelli, 237 N.J. at 352; Grabowsky, 221 N.J. at 552.

Like the statutory requirements of the LGEL and the MLUL, in Wyzykowski, the Court enunciated the four situations under the common law where a public official is disqualified on conflict-of-interest grounds. 132 N.J. at 525-26. Specifically, an official is disqualified when he or she has:

> (1) "[d]irect pecuniary interests," when an official votes on a matter benefitting the official's own property or affording a direct financial gain; (2) "[i]ndirect pecuniary interests," when an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member; (3) "[d]irect personal interest," when an official votes on a matter that benefits a blood relative or close friend in a non-financial way, but in a matter of great importance, . . . and (4) "[i]ndirect [p]ersonal [i]nterest," when an official votes on a matter in which an individual's judgment may be affected [such as] membership in some organization and a desire to help that organization further its policies.
>
> [Ibid.]

The overarching principle of the conflict-of-interest provisions under the LGEL, the MLUL, and the common law is that "[a] citizen's right to 'a fair and

impartial tribunal' requires a public official to disqualify himself or herself whenever 'the official has a conflicting interest that may interfere with the impartial performance of his [or her] duties as a member of the public body.'" Piscitelli, 237 N.J. at 352-53 (quoting Grabowsky, 221 N.J. at 551). In resolving whether an official has a disqualifying interest, "[t]he question is not 'whether a public official has acted dishonestly or has sought to further a personal or financial interest; the decisive factor is 'whether there is a potential for conflict.'" Id. at 353 (quoting Grabowsky, 221 N.J. at 554). To answer that question, a court must determine "whether the circumstances could reasonably be interpreted to show that [a conflicting interest] had the likely capacity to tempt the official to depart from his [or her] sworn public duty." Ibid. (quoting Wyzykowski, 132 N.J. at 523).

Courts should, however, apply the conflict-of-interest rules cautiously, as "[l]ocal governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official." Grabowsky, 221 N.J. at 554 (alteration in original) (quoting Wyzykowski, 132 N.J. at 523). Indeed, public officials "cannot and should not be expected to be without any personal interest in the decisions and policies of government." N.J.S.A. 40A:9-22.4; see also Grabowsky, 221 N.J. at 554 ("It is

essential that municipal offices be filled by individuals who are thoroughly familiar with local communities and concerns."). Accordingly, "the nature of an official's interest must be carefully evaluated based on the circumstances of the specific case." Grabowsky, 221 N.J. at 554 (citing Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258, 268 (1958)).

Applying these principles, we conclude the trial judge mistakenly applied the LGEL, the MLUL, and the common law to enjoin Cohen from participating in any Planning Board proceedings involving plaintiff's complex and all other developments covered by the 2016 HEFSP and the 2016 Final Judgment of Compliance and Repose. The mayor's comments, while showing his disregard for affordable housing, are not tantamount to a conflict of interest regarding plaintiff's complex or any other development pending before the Planning Board due to his direct or indirect pecuniary or personal interest having a likely capacity to tempt him to depart from his sworn public duty. See Piscatelli, 237 N.J. at 352-53. Moreover, as discussed below, due to the appointment of a Mount Laurel Implementation Monitor, Mayor Cohen's participation in the proceedings will be subject to close examination by a neutral observer. Therefore, the disqualification of Cohen is unwarranted.

D. Mount Laurel Implementation Monitor

Defendants contend the judge abused his discretion in appointing a Mount Laurel Implementation Monitor because the Planning Board's denial of plaintiff's site plan application was based on traffic improvement and environmental documentation concerns and not a violation of the 2016 HEFSP, the 2016 Judgment of Compliance and Repose, or Mount Laurel affordable housing mandates. Thus, with no pattern of non-compliance with the Township's affordable housing obligations, the appointment was contrary to the law.

Our Supreme Court has specifically approved the liberal use of special masters to assist the court in fashioning remedies in the complex world of Mount Laurel litigation. S. Burlington Cnty. N.A.A.C.P., 92 N.J. at 281-85, 293. Based upon our conclusions above that the Planning Board's denial of plaintiff's site plan application was arbitrary, capricious, and unreasonable, the judge did not abuse his discretion by appointing an Implementation Monitor to ensure that the Township carried out its affordable housing requirements.

E. Counsel Fees

Under Rule 1:10-3, a judge has the discretion to award counsel fees in a motion to enforce litigant's rights. Defendants contend that the judge abused his

discretion in denying plaintiff's and Fair Share's applications for counsel fees without prejudice, instead of with prejudice because there was no basis for counsel fees.

The judge did not abuse his discretion in denying without prejudice the counsel fees application given plaintiff's on-going efforts to construct the complex and his retention of jurisdiction with respect to enforcement of the 2016 Judgment of Compliance and Response. The uncertainty of future action on the complex justified the judge's decision not to foreclose a future counsel fees request. This is similar to our conclusion above that the judge did not abuse his discretion in denying without prejudice Fair Share's cross-motion to extinguish the Township's rental bonus credits until there is finality as to whether the complex will be built.

F. Advisory Opinion

Defendants contend the trial judge erred in issuing "an advisory opinion" in his February 24, 2020 order regarding potential relief in the event defendants failed to comply with the order. The contention is without sufficient merit to warrant extensive discussion in this opinion. R. 2:11-3(e)(1)(E). Simply put, we see no harm in the judge's comments as defendants were not subjected to any

adverse ruling. The judge was merely admonishing defendants of the potential impact if orders were violated.

Affirmed in part and reversed and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION