**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4192-19

PINELANDS PRESERVATION
ALLIANCE,

     Plaintiff-Appellant,

v.

BURLINGTON COUNTY BOARD
OF CHOSEN FREEHOLDERS,
KATE GIBBS and LATHAM
TIVER,

     Defendants-Respondents.

_____

Argued October 5, 2021 – Decided October 28, 2021

Before Judges Fisher and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0051-19.

Paul A. Leodori argued the cause for appellant (Paul Leodori, PC, attorneys; Paul A. Leodori, on the briefs).

Regina M. Philipps argued the cause for respondents (Madden & Madden, PA, attorneys; Regina M. Philipps, on the brief).

PER CURIAM

Plaintiff Pinelands Preservation Alliance's appeal of an order denying certain discovery, a protective order, and a summary judgment in defendants' favor, is largely dependent on whether two members of the Burlington Board of Chosen Freeholders[1] – defendants Kate Gibbs and Latham Tiver – were in a conflict of interest when voting on the resolution in question because of their relationships to IUOE Local 825. We agree with the trial judge that Gibbs and Tiver had no direct or indirect interest in the resolution and affirm.

In a nutshell, the Alliance alleged in its complaint that Gibbs and Tiver violated the Local Government Ethics Law[2] by voting on a resolution authorizing the county engineer to approve an application to close two county roads that would be affected by New Jersey Natural Gas's construction of the Southern Reliability Link once construction took the pipeline through Burlington County. The Alliance claims that Gibbs's and Tiver's decisive votes

---

[1] Effective January 1, 2021, the term "board of chosen freeholders" was changed to "board of county commissioners," and the terms "freeholder" and "chosen freeholder" were changed to "county commissioner." L. 2020, c. 67. In the remainder of this opinion, we will refer to the entity that approved the resolution as "the board" and the board members as "county commissioners."

[2] N.J.S.A. 40A:9-22.1 to -22.25.

A-4192-19

– the resolution passed 3-2 – were tainted by the fact that their employer, Local 825, had urged in other fora the approval of NJNG's pipeline.

In considering the significance of the two county commissioners' union affiliation,[3] it is important to recognize that the decision to allow NJNG to proceed with the pipeline was not at issue in the adoption of the resolution challenged in this action. The pipeline had received all necessary governmental approvals[4]; the sole question for the board related only to whether, if the

---

[3] The Alliance alleged that Gibbs was employed by the Engineers Labor-Employer Cooperative 825 Labor Management Trust Fund, which was described in the complaint as "a collaborative trust that represents the interests of Local 825 Operating Engineers and focuses on promoting economic development and job creation" in New Jersey. Tiver was employed by the International Union of Operating Engineers Local 825 as an organizer to recruit new members. Local 825 represents operators of heavy machinery. See George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 16 (1994).

[4] In 2015, NJNG petitioned the Board of Public Utilities for approval to construct a gas pipeline from Chesterfield, across portions of Burlington, Monmouth, and Ocean Counties, to a terminus in Manchester. In January 2016, the BPU approved the application, as did the Pinelands Commission in September 2017. Numerous administrative determinations about the Southern Reliability Link were affirmed in a series of unpublished opinions issued a few months ago. See In re S. Reliability Link Pursuant to N.J.S.A. 40:55D-19 & N.J.S.A. 48:9-25.4, No. A-3666/3752-15 (App. Div. Apr. 29, 2021); In re N.J. Natural Gas Co. for Approval & Authorization to Construct & Operate the S. Reliability Link Pursuant to N.J.A.C. 14:7-1.4, No. A-2876-15 (App. Div. Apr. 29, 2021); In re N.J. Pinelands Comm'n's Approval of N.J. Natural Gas's Application No. 2014-0045, No. A-0925/1004-17 (App. Div. Apr. 29, 2021); In re N.J. Pinelands Comm'n's Approval of N.J. Natural Gas's Application No.

resolution was approved, the county engineer would be authorized to close two county roads or, if rejected, the county roads would have to be closed lane by lane. There is no question that the union or its members, assuming they benefited from construction of the pipeline in Burlington County, would not obtain a direct or indirect benefit from the resolution closing the two county roads. The pipeline had been approved and was going to be constructed through Burlington County regardless of the board's approval or disapproval of the resolution.

Prior to the hearing on the resolution, Gibbs and Tiver sought and obtained the advice of counsel that the Local Government Ethics Law would not prohibit their participation because, among other things, the board was not deciding whether the pipeline construction would proceed or whether any road occupancy permit at all would be issued; the board was merely being asked to decide whether or not county roads would be completely closed when the pipeline construction traversed those roads. Ostensibly based on this advice, Gibbs and Tiver participated in the hearing and provided the decisive votes in favor of the resolution.

---

2014-0045, No. A-4997-16 (App. Div. Apr. 29, 2021); In re N.J. Pinelands Comm'n's Approval of N.J. Natural Gas's Application No. 2014-0045, No. A-0999/1005-17 (App. Div. Apr. 29, 2021).

The Alliance's January 2019 complaint sought relief in lieu of prerogative writs and alleged, among other things, violations of the Local Government Ethics Law, the federal and state constitutions, and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2. Soon after, the Alliance served discovery requests, including notices to depose defendants, the Burlington County Solicitor, and a contractor hired by NJNG to construct the pipeline. Defendants objected to much of this, claiming the discovery requests were frivolous, vexatious, and harassing. No depositions were taken. Instead, in May 2019, a judge dismissed the civil rights claim but denied dismissal of the claims alleging violations of the Local Government Ethics Law; the judge also enjoined defendants from any activity in furtherance of the resolution. A discovery motion followed, as well as a motion by defendants for a protective order concerning the legal advice received by Gibbs and Tiver prior to their participation at the December 12, 2018 hearing. Ultimately, in March 2020, the judge presiding over the matter after the original judge retired, granted the request for a protective order and denied the Alliance's motion to compel discovery without prejudice because of defendants' anticipated summary judgment motion, which soon followed.

In moving for summary judgment, defendants claimed the Alliance could not show Gibbs and Tiver were in a conflict of interest when voting on the

A-4192-19

resolution. The Alliance opposed the motion, arguing: the information provided to support the legal advice rendered to Gibbs and Tiver was inadmissible or misleading because of the absence of other discovery about the context in which that advice was given; the certifications of Gibbs and Tiver included inadmissible hearsay and hearsay within hearsay; the attorney who provided advice about Gibbs's and Tiver's participation in voting on the resolution had not been shown to have expertise in the Local Government Ethics Law; discovery in general was still outstanding and summary judgment was therefore premature; and summary judgment in defendants' favor would necessarily require an inappropriate determination on the credibility of Gibbs's and Tiver's assertions.

Closer to the heart of the matter, the Alliance argued that the existing record demonstrated a conflict of interest because Gibbs and Tiver voted in favor of a resolution that facilitated the pipeline's construction favored by the union that employed them. The Alliance's trial court brief in opposition to defendants' summary judgment revealed this attenuated view of a conflict of interest, claiming Gibbs and Tiver:

> knew at the time of the vote that [the Southern Reliability Link] was subject to a pending appeal in the Appellate Division, an appeal that could result in the project being halted or changed, but that NJNG had

6

decided to go ahead and build as much as it could while the appeals were pending. Since the Resolution was admittedly designed to expedite construction, it also could have the effect of helping NJNG beat the clock on the appeal and complete construction before the Appellate Division ruled. [In taking actions while on the board], Gibbs and Tiver helped ensure the pipeline could get its permit in time to build in Burlington County before any appeals were decided. This result would plainly benefit those employed to build [the Southern Reliability Link].

The judge presiding over the discovery disputes recused herself and the summary judgment motion was heard by Judge Kathi F. Fiamingo, who rejected the Alliance's arguments about the admissibility or the alleged lack of context and surrounding circumstances concerning the legal advice in favor of Gibbs and Tiver's participation in the resolution's approval. The judge declined to decide whether the advice of counsel absolved Gibbs or Tiver from a penalty for any alleged violation of the Local Government Ethics Law, even if the advice was mistaken. Instead, Judge Fiamingo determined that no conflict existed, holding that the record established that Gibbs and Tiver had no

> direct or indirect pecuniary interest with respect to the road occupancy permit's approval. Neither . . . defendants nor anyone associated with . . . defendants have any interest in any entity that would benefit from the issuance of a road occupancy permit. Similarly, the defendants have no direct personal interest in the Resolution as that interest is described in Wyzykowski [v. Rizas, 132 N.J. 509, 525-26 (1993)].

7

The judge observed, as well, that there was

> a significant disconnect between [the Alliance]'s argument that Local 825 supported the construction of the [pipeline] and its conclusion that Tiver['s] and Gibbs['s] vote[s] on the Resolution furthered that interest such that there was a conflict of interest on their part. The only matter before the [Board] on December 12, 2018[,] was the issuance of a road occupancy permit that would permit NJNG to engage in road closures during the construction affecting various roads in Burlington County. Neither an affirmative vote nor a denial would have affected the actual construction of the SRL. That decision was not within the purview of the [board].

The Alliance appeals orders entered on March 17, and June 16, 2020. The former denied the Alliance's motion to compel discovery and granted defendants' cross-motion for a protective order, and the latter granted defendants' summary judgment motion. We find insufficient merit in the Alliance's arguments to warrant further discussion in a written opinion, R. 2:11-3(e)(1)(E), and we affirm the grant of defendants' summary judgment motion substantially for the reasons set forth by Judge Fiamingo in her written decision.

We add only our agreement that Gibbs and Tiver were not in a conflict of interest when participating in the discussion about and by voting on the road-closure resolution because of their union affiliation. As has been firmly established, the union would not benefit from the adoption of a resolution to

8

close the county roads even when necessary to accommodate the construction of a pipeline that had been approved elsewhere.

The Local Government Ethics Law declares that a local government officer may not act in an official capacity when the officer, a member of the officer's immediate family, or the officer's business "has a direct or indirect financial or personal involvement that might reasonably be expected to impair" the officer's "objectivity or independence of judgment." N.J.S.A. 40A:9-22.5(d). In Wyzykowski, 132 N.J. at 525-26, and again in Grabowsky v. Twp. of Montclair, 221 N.J. 536, 553 (2015), the Court identified four settings – two of which suggest a "direct" interest and two of which suggest an "indirect" interest – in which disqualification would be mandated by the Local Government Ethics Law and urged the application of its principles "with caution" lest local governments be "seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official," Wyzykowski, 132 N.J. at 523. More simply put, the Court counseled that a conflict arises when the official "faces 'contradictory desires tugging . . . in opposite directions.'" Piscitelli v. City of Garfield Zoning Bd. of Adjustment, 237 N.J. 333, 353 (2019) (quoting Wyzykowski, 132 N.J. at 524).

9

We agree with the trial judge that there was no tug and therefore no conflict here. The union may benefit from the pipeline's construction but the resolution's adoption did not further the construction, either directly or indirectly. The resolution dealt only with how the county would deal with traffic once construction inevitably reached its roadways. Gibbs and Tiver were entitled to consider and vote on that resolution without running afoul of the Local Government Ethics Law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION